R. W. BERRY V. EQUITABLE FIRE & MARINE INSURANCE COMPANY, Plaintiff in Error.—298 S. W. 63.

Division One, September 16, 1927.

1. **BRIEFS: Filed in Court of Appeals: Permission to File Here.** Defendant in error having been permitted to file briefs in the court of appeals in a case transferred to this court needs no permission to file like briefs in this court. Briefs on file in a court of appeals are a part of the files to be forwarded to this court when the case is certified here.

2. **APPEAL: Dismissal: Execution: Collection of Judgment: Moot Case.** Defendant having appealed from a judgment against him and having dismissed the appeal, and plaintiff after the dismissal having sued out execution and collected the judgment, the case does not become a moot one, if a timely writ of error was sued out after the appeal was dismissed, whether or not a **supersedeas** bond was given. If the appeal was taken or the writ of error sued out without bond, the judgment can be immediately collected on execution, but the defendant, if the judgment is reversed, can recover back from the plaintiff the amount recovered upon the reversed judgment. Neither is defendant compelled to give a **supersedeas** bond in support of his writ of error, and if the writ is timely issued without bond, after his appeal was dismissed and execution issued, and the judgment is reversed, he may recover back from the plaintiff the amount collected upon the execution.

3. **TRANSFER FROM COURT OF APPEALS: How Considered.** The Supreme Court will determine a case transferred to it by a court of appeals as if the case came to it by direct appeal from the circuit court, and will therefore consider each of the points made in appellant's brief.

4. **FIRE INSURANCE: Automobile: Loss-Payable Clause.** Where the loss-payable clause attached to the fire policy upon an automobile stated that "any loss upon this policy that may be proved due the assured shall be paid to the assured and R. W. Berry" there can be no recovery by Berry, who was mortgagee, unless a loss is "proved due the assured," or unless the plea of estoppel in pais is available against the insurer. And where the policy was never delivered to the assured, the premium was paid by the mortgagee, the policy was cancelled as to the assured, and the automobile surrendered by the assured to the mortgagee before the fire, the assured sustained no loss. And the right of Berry to recover cannot be based on the fact that he was mortgagee, where the policy does not recite that the loss is payable to him as his interest may appear, because said loss-payable clause does not undertake to insure him as mortgagee, but says only the loss "proved due the assured" is payable to him.

5. ———: **Loss-Payable Clause: Mortgagee as Interest Appears: Collateral Contract.** A clause in a fire insurance policy merely making the loss payable to the mortgagee as his interest may appear, without more, is a mere loss-payable clause, and is merely collateral to the principal undertaking to pay the mortgagor, and merely makes the mortgagee a simple appointee to receive payment, and his rights are no greater than those of the assured; and to save its avoidance or termination as to the mortgagee upon its cancellation as to the assured, the policy must contain a further stipulation

that the interest of the mortgagee shall not be invalidated by the act or neglect of the assured. And a clause attached to a policy declaring that "any loss under this policy that may be proved due the assured shall be payable to the assured or R. W. Berry" is a loss-payable clause, and the right of Berry, though a mortgagee, to recover, is not to be determined by the law governing standard mortgage-payable clauses in a policy.

6. **FIRE INSURANCE: Estoppel in Pais: Oral Assurances.** A statement by the local agent to the mortgagee that the assured had not paid the premium on the policy, and that for his own safety he had better pay it, and a payment of the premium, will not make a contract between the mortgagee and the company, where none had previously existed. And a further statement by the agent to the mortgagee that unless he took over the car according to the mortgage, he would cancel the policy, but that if he took it over he would not cancel it, and the taking over of the automobile by the mortgagee, does not change the legal effect of the existing policy. And where the only loss-paying clause attached to the existing policy declared that "any loss under this policy that may be proved due the assured shall be payable to the assured or" the mortgagee, such statements and acts do not enlarge the agreement, do not amount to estoppel in pais, and do not warrant a judgment for plaintiff for the amount of loss he suffered when the automobile burned, where the assured suffered no loss.

7. ————: **Warranties: Misrepresentation: Truth Ascertainable from Other Statements.** A misrepresentation of a material fact in an application for an insurance policy will not defeat recovery under the statutes (Secs. 6233, 6234, R. S. 1919), where it contains other correct statements from which the insurer may easily ascertain that the alleged false representation is incorrect. [Overruling Bushong v. Security Ins. Co., 253 S. W. 175; Kinney v. Franklin Fire Ins. Co., 247 S. W. 249, and Smith v. American Automobile Ins. Co., 188 Mo. App. 297, 175 S. W. 113.]

---

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 1702, p. 98, n. 91; Section 2388, p. 580, n. 20. Courts, 15 C. J., Section 518, p. 1093, n. 67. Fire Insurance, 26 C. J., Section 166, p. 142, n. 17; Section 170, p. 144, n. 62; Section 202, p. 163, n. 91; Section 354, p. 284, n. 98; Section 581, p. 434, n. 91. Pleading, 31 Cyc., p. 87, n. 64.

Transferred from Springfield Court of Appeals.

Reversed.

*D. A. Murphy* and *Fyke, Snider & Hume* for plaintiff in error.

(1) The policy sued on was issued to Carmack. He was the assured. The loss-payable clause, which it is alleged in the petition, "was attached to the policy at the instance of plaintiff," was as follows: "Any loss under this policy that may be proved due the assured shall be payable to the assured and R. W. Berry, subject nevertheless to all the terms and conditions of the policy." Under this clause the plaintiff was not the assured, but was a mere appointee to receive payment of part of the loss that was proved to be due the assured Carmack, and anything that would defeat a recovery by the as-

sured (Carmack) would defeat a recovery by plaintiff. Kabrich v. Ins. Co., 48 Mo. App. 397; Kempf v. Ins. Co., 41 Mo. App. 30; Van Buren v. Ins. Co., 28 Mich. 398; Sias v. Ins. Co., 8 Fed. 187; Gillett v. Ins. Co., 73 Wis. 203; Barrett v. Ins. Co., 7 Cush. 175; German Ins. Co. v. Hazelus, 21 Colo. 227; Union Bldg. Co. v. Ins. Co., 83 Iowa, 647; Warbasse v. Ins. Co., 42 N. J. L. 203; Grosvenor v. Ins. Co., 17 N. Y. 391; Holbrook v. Ins. Co., 117 Cal. 561; Agricultural Ins. Co. v. Hamilton, 82 Md. 88; Franklin Sav. Inst. v. Ins. Co., 119 Mass. 240; Fidelity Phenix Ins. Co. v. Cleveland, 156 Pac. 639. (2) It is alleged in the petition and the reply that the policy as to Carmack was cancelled in April, 1922, long before the fire. From that time the policy was of course unenforceable by Carmack, and no loss could be proved to be due him. Therefore, plaintiff could not recover upon said policy. Authorities supra. (3) The breach of warranty in the policy as to the age of the car would defeat any action by Carmack, even if the policy had not been cancelled, and plaintiff is in no better position than Carmack. Smith v. Ins. Co., 188 Mo. App. 297; Buck v. Ins. Co., 209 Mo. App. 302.

*McReynolds, McReynolds & Flanigan* for defendant in error.

(1) The Missouri rule is that a mortgagee may sue and recover in his own name to the extent of his interest, where at the time of the loss he is in possession after condition broken. Walton v. Phoenix Ins. Co., 162 Mo. App. 316; Anthony v. German American Co., 48 Mo. App. 65. It will be patent from a reading of those cases that there is nothing in defendant's claim that Berry as mortgagee could not sue alone. (2) Carmack had no interest whatever under the policy. That being true he could not sue. The loss-payable clause provided that the loss should be paid to both. The defendant cancelled Carmack's interest and that left the loss payable to Berry only. (3) Defendant contends that it is well settled by all the authorities that under a loss-payable clause such as this, if for any reason the assured cannot recover, then the party named in the loss-payable clause cannot recover. Defendant then goes on to claim that the policy was void as to Carmack because it is alleged Carmack misrepresented the year of manufacture of the automobile. A misrepresentation as to year of manufacture will not be fatal where the assured furnishes other items of information which would lead to discovery of the truth. Traynor v. Ins. Co., 181 N. W. 566; White v. Home Mutual Ins. Co., 179 N. W. 315; Locke v. Royal Ins. Co., 220 Mass. 202; British & Foreign Ins. Co. v. Cummings, 113 Md. 350. (4) No notice of cancellation was ever served on Berry. Under the law he was absolutely entitled to a notice of cancellation. Where the policy was cancelled as to the assured, but no notice thereof was

given to the mortgagee, the mortgagee has the right to recover on the policy in his own name. Gillman v. Com. Ins. Co., 112 Me. 528; Adams v. Farmer's Mutual Ins. Co., 115 Mo. App. 21; Lee v. New Hampshire, 70 S. E. 819; Rawl v. Am. Central Ins. Co., 45 L. R. A. (N. S.) 463; Glascock v. Liverpool Ins. Co., 188 S. W. 283; Bard v. Fireman's Ins. Co., 81 Atl. 870. (5) Edwards waived the provision against change of title, possession and ownership when he delivered the policy to Berry and assured him that the policy would be good if Berry would retake the car. Terminal Ice Co. v. Security Ins. Co., 198 S. W. 1124. Moreover, after the cancellation of April, 1922, the defendant company retained the premium and made no tender of the unearned premium to the plaintiff Berry until after the fire. This retention of premium constituted a waiver of all grounds of forfeiture which were known to the company. Shutts v. Ins. Co., 159 Mo. App. 436; Springfield Steam Laundry v. Traders Ins. Co., 151 Mo. 90; Thompson v. Traders Ins. Co., 169 Mo. 112; Gold Mining Co. v. Fire Ins. Co., 267 Mo. 524.

GRAVES, P. J.—This case reaches this court upon certification by the Springfield Court of Appeals. Such certification is based upon the ground of conflict of opinions in the Courts of Appeals. The cause originated in the Circuit Court of Jasper County. Glancing over the brief, we note that the sufficiency of the petition is challenged. The petition is short, and we quote it in full as follows:

"For cause of action plaintiff states that defendant is a fire insurance corporation having and usually keeping in Jasper County, Missouri, an office and agent for the transaction of its usual customary business, to-wit, the business of writing policies of fire insurance. Plaintiff states that on the 30th day of September, 1921, the defendant issued to one C. Carmack, a certain policy of fire insurance, upon an automobile, the same being a 1917 Model 83 Overland Touring car, factory or serial number 48,747, by the terms of which policy the defendant insured the said Carmack for the space of one year, against direct loss or damage by fire, not to exceed $300, to the body, machinery and equipment of said automobile, while within the limits of the United States. Plaintiff states that there was attached to said policy. at the instance of the plaintiff, a loss-payable clause by the terms of which it was and is provided, that any loss under said policy should be payable to the assured and R. W. Berry. Plaintiff further states that at the time said policy was issued the plaintiff had, and ever since has had, and now has, an insurable interest in the subject of insurance, to-wit, said Overland automobile, the nature of his said interest being a chattel mortgage thereon, given by the said Carmack to the plaintiff to secure to plaintiff the payment of an indebtedness of $275, no part of which indebtedness has been paid to the plaintiff. Plaintiff states that said policy was issued at his in-

stance and request, and that the plaintiff paid to defendant's agent the required premium on said policy, amounting to $7.65. Plaintiff states that thereafter the defendant cancelled said policy of insurance as to the said C. Carmack so that now the said Carmack has no rights under said policy, but that the said policy, as to the plaintiff, was never cancelled, but is now, and always has been, in full force and effect.

"Plaintiff further states that on June 23, 1922, and during the life of said policy the said automobile thereby insured was damaged by fire to the extent of $275. That the plaintiff has kept and performed all the terms and conditions of said policy of insurance, and that there is now due the plaintiff under said policy on account of said fire, the sum of $275, which sum the defendant has vexatiously refused to pay, although payment has been demanded. Plaintiff states that the said loss occurred and plaintiff's cause of action accrued within Jasper County, Missouri. Plaintiff states that a reasonable attorney's fee for bringing and prosecuting this suit is $100. Plaintiff files herewith said policy, and makes the same part of this petition.

"Wherefore plaintiff prays judgment against the defendant for the said sum of $275, being the amount of his loss under said policy, and in addition thereto, because of defendant's vexatious refusal to pay said loss, the sum of $100 by way of attorney's fees, and ten per cent of the amount of plaintiff's said loss, together with his costs."

The answer pleads no liability for several reasons, the particulars of which can be noted as occasion may require. Meeting some defenses pleaded in the answer the reply pleads estoppel by acts *in pais*, and this reply can be noted as occasion requires.

Upon trial *nisi* the plaintiff had judgment for $150, and this writ of error was sued out in the Springfield Court of Appeals. Counsel for plaintiff in error (defendant *nisi*) say that an appeal was perfected to the Springfield Court of Appeals, but add:

"The appeal by reason of the fact that defendant failed to serve counsel for the plaintiff with abstract of the record and brief as required by the rules of this court, was dismissed at the October term, 1923, of this court, and thereafter on the 18th day of October, 1923, writ of error was sued out by defendant and this case is now pending in this court upon a writ of error. Due notice of the suing out of this writ was served upon plaintiff's counsel and service thereof acknowledged November 1, 1923, which notice is attached to the record in this cause."

Going to the history of the case *nisi*, it should be said that the cause was tried before the court (without the intervention of a jury) upon the issues joined and the cause submitted to the court on December 20, 1922. At time of submission, time was given for the filing of

briefs by both parties at the January term of the court at Joplin. On the 3rd day of February, 1923, at the January term of the court, the judgment aforesaid was entered. This writ of error was sued out October 18, 1923, and returnable to the March term, 1924, of the said Court of Appeals, so that it appears (1) that the writ of error was sued out three days after the appeal had been dismissed, but (2) within one year from date of judgment. We are more elaborate in our statement of the case, because the Constitution says that the Supreme Court "must rehear and determine said case or proceeding (one certified to the Supreme Court by a Court of Appeals), as in a case of jurisdiction obtained by ordinary appellate process." [Section 6 of the Constitutional Amendment of 1884.] We shall not state the evidence in detail at this time, but leave such details to the opinion. It suffices to say that the plaintiff introduced evidence which he evidently thought tended to show his right to recover upon the policy of insurance, as well as the estoppel pleaded in his reply. So also the defendant introduced evidence which it thought tended to sustain the defenses pleaded. Such is a general outline of the case.

I. At first glance we thought that we had a moot case, as cases sometimes become moot after judgment *nisi.* In the instant case, we find application of counsel for the plaintiff *nisi* (defendant in error here), asking leave to file, as *amici curiae,* copies of their

**Moot Case.** trial brief in this court. In the application counsel state that when the appeal was dismissed in the Springfield Court of Appeals, they (counsel) sued out execution and collected the judgment for their client. They aver that their client left the community—and they were unable to find him or to get him to authorize them to appear for him in the present case in the Court of Appeals; that they asked the Court of Appeals to allow them to file copies of their trial brief, *amici curiae,* got permission to, and did file same. In this situation there was no reason to apply to this court, as the briefs on file in the Court of Appeals were a part of the files to be forwarded to this court when the case was certified here. So what counsel ask to file have been filed by leave of the Springfield Court of Appeals. The additional ten copies filed here can do no harm, and they are permitted to be filed, as of course.

The case is not a moot case, in that the payment of the judgment was a forced one, and upon execution. It was not voluntary. Appellant could have appealed without bond, and in such case the judgment could have been immediately collected on execution, but if appellant won on appeal (without *supersedeas*) it could recover back from the opposite party the amount collected from it upon the reversed judgment. So, too, defendant did not have to give *supersedeas,* when it sued out this writ of error, but should this writ be

successful, and the judgment be reversed, it can recover back from the plaintiff *nisi* the amount plaintiff collected.

S'o, we conclude that the case is not a moot case. There was no voluntary settlement of the judgment, and nothing done to preclude the prosecution of this writ of error. Neither side makes the point, but moot cases should not take up the time of the appellate courts, and such courts have usually made the point for themselves, and so we have done here.

II. Plaintiffs in error make but four points in their brief. Omitting the long list of authorities cited, under Point 1, they are:

"1. The policy sued on was issued to C. Carmack. He was the assured. The loss-payable clause, which, it is alleged in the petition, 'was attached to the policy at the instance of plaintiff,' was as follows: 'Any loss under this policy that may be proved due the assured shall be payable to the assured and R. W. Berry, subject nevertheless to all the terms and conditions of the policy.' Under this clause the plaintiff was not the assured, but was a mere appointee to receive payment of part of the loss, that was proved to be due .the assured Carmack, and anything that would defeat a recovery by the assured Carmack, would defeat a recovery by plaintiff.

"2. It is alleged in the petition and the reply that the policy as to Carmack was cancelled in April, 1922, long before the fire. From that time the policy was of course unenforceable by Carmack, and no loss could be proved to be due him. Therefore, plaintiff could not recover upon said policy. Authorities supra.

"3. The breach of warranty in the policy as to the age of the car would defeat any action by Carmack, even if the policy had not been cancelled, and plaintiff is in no better position than Carmack. [Smith v. Ins. Co., 188 Mo. App. 297; Buck v. Ins. Co., 209 Mo. App. 302.]

"4. Neither Carmack nor plaintiff complied with the provision of Secs. 7553-7561, R. S. 1919: 'Any sale or transfer of said motor car without complying with the provisions of this section (7561) shall be fraudulent and void and the vendor and vendee shall each be subject to a penalty of fifty dollars.' "

The Court of Appeals, in its opinion, says: "The only defense of substantial merit is that Carmack represented the automobile to be a 1917 model, when in fact it was a 1916 model." This is Point 3 in the brief of plaintiffs in error, supra. The Court of Appeals concludes its opinion thus:

"We have, we think, disposed of the only question of substantial merit, and it is our conclusion that the judgment rendered below should be affirmed, and it is so ordered. But since our holding here is in conflict with the case by the Kansas City Court of Appeals as explained above, we order that the instant cause be certified to the Supreme Court."

In other words the Court of Appeals reviewed the cases on misrepresentation of facts, and the facts in the instant case, and concluded that there was no misrepresentation as to facts that would defeat a recovery by Carmack, the owner. Such court further found that their opinion in this case conflicted with that of the Kansas City Court of Appeals in other cases.

Our duty is to hear and determine the case as if here by direct appeal to this court. [Section 6, Amendment to our Constitution adopted in 1884.] We shall therefore consider each of the points made, supra.

III. The first point is that Carmack could not recover, (1) because the policy had been cancelled as to him, and (2) because of his misrepresentation of facts, made warranties by the **Loss Payable to Assured.** terms of the policy. Plaintiff in error urges that in no event can the defendant in error recover on this policy, unless a loss was proved to be due to Carmack.

There is a mass of learning upon "mortgage clauses" in the policy, and "loss-payable clauses" attached to the policy of insurance. See extended notes on the cases of Brecht v. Law Union & Crown Ins. Co., 18 L. R. A. (N. S.) 197, and of Smith v. Germania Fire Ins. Co., 19 A. L. R. l. c. 1449. If our inquiry requires us to invade this field, then it must be done with well-measured steps, because we have pending in this division another case (Ford v. Iowa State Ins. Company), for consideration, in which this particular field of investigation is uppermost. It is a more important case than this one. For this reason we shall be particular as to the facts of this case.

The assured was C. Carmack of Diamond, Missouri, R. R. 2, and the term of the policy was from September 30, 1921, to September 30, 1922. If there was a "mortgage clause" in the face of the policy, plaintiff in error has not seen fit to set it out in the abstract. The "loss-payable clause" reads:

"Uniform Standard Missouri                                    Form No. 111.
        "Loss Payable Clause No. 1.

"Any loss under this policy that may be proved due the assured shall be payable to the assured and R. W. Berry subject, nevertheless, to all the terms and conditions of the policy. Dated October 1, 1921."

The assured was Carmack. The parties to whom the loss is payable are "the assured and R. W. Berry," but the loss which is payable to these two parties is a loss, "that may be proved due the assured." It is undisputed in this record that there was a clause in the policy giving the company the right to cancel the policy upon five days' written notice. And this cancellation could be "with or without tender of excess premium." Nor is it questioned that this policy had been cancelled as to Carmack some time before the fire occurred, unless the failure to return unearned premium obviates the

cancellation. The policy says it must be paid upon demand, and no demand was made. According to Berry, the assured Carmack never paid the premium, but he (Berry) paid it in February, 1922, some time before the fire, but left the policy, at the time, where it always had been, in the hands of Edwards, the agent of the Insurance Company. The petition says Berry ordered the policy, and the "loss-payable clause" thereon, but there is no evidence of these facts. In fact Berry (on cross-examination) says he never saw the policy until June 20, 1922, and knew nothing about the "loss-payable clause." Nor was there ever a delivery to Carmack. Berry got the policy from Edwards on June 20, 1922, and took the car from Carmack (who willingly surrendered it under the mortgage to Berry) on June 21, 1922, and on the road from Carmack's to Carthage, Missouri, on June 23, 1922, the car took fire and burned. So as a fact Berry was a mortgagee in possession at the time of the fire, if this be material. The "loss-payable clause" says nothing about Berry's interest in the insured car. However, it is stated by Carmack in the policy that he owned the car, and that it was fully paid for except it was subject to a mortgage for $275 to Berry. This is a mere recital by Carmack as to the condition of his title. Neither the policy nor the "loss-payable clause" undertakes to insure Berry as a mortgagee. This "loss-payable clause" does not even recite that the loss is payable to Berry as his interest (as mortgagee or otherwise) may appear. On the contrary the loss which is payable "to the assured and R. W. Berry" must be a "loss under this policy that may be proved due the assured." It is clear that, in this case, we will not have to delve into the learning upon "mortgage clauses in the policy" and "loss-payable clauses" attached to the policy. There could be no loss proved to be due to Carmack, the assured. As to him the policy had been cancelled, and he had no rights thereunder. This cancellation appears to have been on April 14, 1922, by written letter (notice) to Carmack. The petition pleads its cancellation as to Carmack, and the reply also pleads it and says it was on April 14th. The policy was yet in the hands of Edwards, the agent of the defendant *nisi*, plaintiff in error here. Carmack had paid no premium—nor was the policy ever delivered to him. This premium was paid by Berry in the February prior to the fire. For this reason (if not for others), no tender of return premium was necessary, so far as Carmack is concerned. A sufficient reason is that in both petition and reply plaintiff admits the due cancellation of the policy as to Carmack. The company owed Carmack no premium because it got none from him. Berry did pay the premium. He says they did not cancel the policy as to him, and no return of premium, as to Berry, was required until cancellation of the policy. After the loss there was a tender to Berry, but of course it was useless at that time. Carmack

could prove no loss under the policy because as to him it had been cancelled. In both petition and reply the due cancellation is admitted. The only kind of a loss (under the loss-payable clause) which Berry was entitled to receive, was one which had been proved to be due to Carmack. Note the language, *"that may be proved* due the assured." · Carmack was the assured. Neither the policy nor the "loss-payable clause" attempts to make Berry an assured. This we say without reference to the much learning upon "loss-payable clauses." This "loss-payable clause" neither mentions Berry as owner nor as mortgagee. The policy only suggests that he had a mortgage on the automobile, but this only in connection with Carmack's statement as to his title and ownership. There is, in the reply, a plea of estoppel *in pais*. Unless there is substance in this plea, there was made no case for Berry in the trial court.

IV. One thought before we go to the plea of estoppel. We can cite some law, universally recognized, which does not trench upon the close question in the cases as to "mortgage-payable clauses in the policy" and "loss-payable clauses attached to the **Mortgagee** policy." We have no "mortgage clause in the pol- **as Appointee.** icy" to consider in this case, because none such is in the record. We have a "loss-payable clause" attached to the policy. The plaintiff in error. claims, and we think rightfully, that this clause does not make Berry an insured person. In the note to the Brecht case, cited supra, in 18 L. R. A. (N. S.) 1. c. 199, it is said: "Generally, instead of having a policy assigned to him, a. mortgagee has the insurer indorse thereon what is usually called 'the loss-payable clause'—that is, a clause providing that the loss, if any, shall be payable to the mortgagee as his interest may appear. If there is no other stipulation in regard to the interest of the mortgagee, the overwhelming weight of authority sustains the proposition that the contract ·as to the mortgagee is merely collateral to the principal undertaking to pay the mortgagor, and that the mortgagee is merely an appointee of the fund, and his rights are no greater than those of the assured; and that, therefore, a breach by the latter will avoid the policy as to the mortgagee." On page 200 of 18 L. R. A., supra, the list of cases supporting this rule is given. In · other words the mortgagee has no separate contract of insurance, under such a loss-payable clause, but his rights stand or fall by the acts of the assured. If the assured's acts void the policy, the mortgagee has no rights. So too, in 14 Ruling Case Law, page 1084, section 264, it is said: "A clause in a policy merely making the loss payable to a mortgagee as his interest may appear makes the mortgagee the simple appointee of the mortgagor, to receive the proceeds of the amount of his interest, and to place his indemnity at the risk of every act and omission of the

mortgagor that would avoid, terminate, or affect the insurance of the latter's interest under the terms of the policy. But, as has heretofore been stated in considering affirmative warranties, policies issued at the present time protecting the interest of a mortgagee usually contain what is known as the union or standard mortgage clause by which it is stipulated that, in case the loss is directed to be payable to a mortgagee, the interest of the mortgagee in the proceeds of the policy shall not be invalidated by the act or neglect of the mortgagor or owner of the insured property, or, less frequently, that no act or default of any person other than the mortgagee or those claiming under him shall affect his right to recover in case of loss. In construing this clause, the authorities are unanimous in holding that it operates as a separate and independent insurance of the mortgagee's interest, to the extent, at least, that no act or omission on the part of the owner, which occurs after the issuance of the policy, will affect the mortgagee's right to recover.''

What is called the union or standard mortgage clause was fully considered by our St. Louis Court of Appeals in Trust Co. v. Insurance Co., 201 Mo. App. 223. There it was held, as the text says, that such a clause makes another contract of insurance as between mortgagee and the insurance company. But we have no such clause in the case at bar. At most Berry was a mere joint agent to receive pay for a loss suffered by Carmack. So we go now to the question of estoppel pleaded in the reply.

V. The petition avers that the policy was issued at the instance and request of Berry, and that he paid the premium. There was no such evidence. The reply is long on allegations, but boiled down, it pleads that Edwards, the agent of plaintiff in error, wrote **Estoppel** Berry that Carmack had not paid the premium on the **in Pais.** insurance policy, and that he, Berry, paid it immediately after this notice, which was in February, 1922. The policy was dated September 30, 1921, and had never been out of the possession of the agent at that time. The reply then pleads that on June 20th, he (Berry) got the policy from Edwards, and that Edwards told him then (June 20th) that the policy had been cancelled as to Carmack, and that if he (Berry) did not take possession of the car under his mortgage, the policy would be cancelled as to him; that if he did take it, the policy would not be cancelled; that acting upon this assurance of Edwards, the agent, he did take possession of the car under his mortgage, and that by reason thereof the insurance company should be estopped from saying that the cancellation of this policy as to Carmack worked a defeat of his loss as mortgagee of the car. Here is the whole proof on the subject:

"I had no conversation with Mr. E. A. Edwards prior to the 20th of June, 1922. This policy remained in his office from time issued until June 20th, at which time I went to his office to get the policy.

"Q. Who paid, if you know, the premium of $7.65 on the policy? A. I paid it, sometime in February of 1922, paid it to E. A. Edwards; I received a notice from him that Mr. Carmack hadn't paid the premium on the policy and for my own safety I better come to the office and make arrangements, which I did the very same evening. Mr. Carmack paid no part of the premium on this policy. Mr. Edwards is supposed to be the local agent for this company writing policies and attaching riders thereto and accepting payment of premiums. After payment of this premium the next conversation I had with Mr. Edwards was June 20, 1922.

"Q. State to the court what that conversation was.

"To which question defendant's counsel objected for the reason the policy is written now and the rider is attached to the loss-payable clause; any testimony, any parole testimony now being offered by the plaintiff, to undertake to vary any terms or conditions of this policy, the written contract, is inadmissible. Therefore, I object to it as being incompetent, irrelevant and immaterial.

"THE COURT: Of course any oral testimony, to vary the terms of it would be inadmissible, unless something tending to show a waiver, I think would be competent.

"Court overruled objection, and defendant at the time excepted.

"A. I went up to get the policy which was in his office at the time, and Mr. Edwards told me, he says, 'I tell you, if you don't take over that car according to your mortgage, I will have to cancel the policy, but if you take it over, I will not cancel the policy. It is already—'

"Defendant's counsel requested the court to strike out said answer because immaterial, which request was by the court denied, and defendant excepted at the time.

"I delivered the car to Mr. Carmack on the 26th of September, 1921. I recovered possession of the auto the 21st day of June, 1922. Between those dates Mr. Carmack had possession of the automobile.

"Q. Well, Mr. Berry, with reference to the care that Mr. Carmack was giving the car, was anything said in that conversation? A. Yes, sir. He said, according to the mortgage—I passed there a few days ago and your car is not taken care of according to your mortgage and not kept up.

"The defendant asked the court to strike out said answer because it was incompetent and irrelevant, and for the same reason before stated.

"The court said: I think it is competent for that purpose, to show knowledge of the agent. That provision could be waived by the agent.

"The court denied the motion, to which defendant at the time excepted.

"On   that date, June 20, 1922, I got the policy, Mr. Edwards had the policy from September 30, 1921, until June 20, 1922.   I never had it and Mr. Carmack never had it.

"Following that conversation I took the matter up with a few attorneys, with two, to find out which I better do, and they advised me if Mr. Carmack will turn it over peaceably, take it; if not, turn it over to the authorities to take over.   I went out to Mr. Carmack's, just as the mortgage calls for, with mechanics to examine the car on June 21, 1922.   I went out and asked Mr. Carmack if he is willing to turn over the car peaceably.   He says, 'Why, sure, I am.'   I stated to him the reason, which was that he had not kept it up.   Mr. Jones and Mr. Queen accompanied me.   Mr. Carmack says, 'I can't pay you; my hands are tied, I can't do nothing.' "

Further on Berry said: "I took the car over according to the mortgage entirely with the purpose of foreclosing the mortgage.   On the same day I brought it to Carthage and put it into the shop and the same two parties helped, we drug it in.   After the fire, I notified Mr. E. A. Edwards.   I called him up over the phone as soon as I got it in the shop.   He told me to have it repaired and turn in the bill. I says, 'This is harvest time and I haven't time to fool with it at present, as soon as I get time I will come and see you.' "

"To all of which statement of the agent defendant at the time excepted, for the reason stated before, because the agent can't bind the company under the terms of that policy.   Everything is embraced in that policy and the policy is the written contract between the parties."

The first thing is what Edwards said at the time he gave notice as to the premium on the policy.   According to Berry the notice said: "Mr. Carmack hadn't paid the premium on the policy and for my own safety I had better come to the office and make arrangements." At that time the policy, if ever in force at all, was in force as to Carmack, because it had not been cancelled then as to Carmack.   But this statement is not such as would make a contract of insurance as between Berry and the insurance company, where none had existed before.   It could only mean that unless the premium was paid he would lose just such rights as the appearance of his name in the payment of loss clause gave him.   It cannot be construed to mean that Edwards was agreeing orally to a new contract, which would in fact insure Berry when he had no insurance before.

Now to the next statement of Edwards: "I tell you, if you don't take over that car according to your mortgage, I will have to cancel the policy, but if you take it over, I will not cancel the policy."

There is not a word in this (and it is the agent's strongest expression), that the agent desired to change the legal effect of the then existing policy. He only said that, if he did not take the car, he would cancel the existing policy—whatever the legal effect of the policy should be. He kept his word, and did not notify Berry of its cancellation, as he did Carmack. The plea of estoppel fails for want of proof.

But even if Edwards was disposed to think that he was, by his course of conduct, insuring Berry's interest as a mortgagee, he could not do it in this way. The policy provides: "This policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or endorsed hereon, and to the provisions, exclusions, conditions and warranties printed or endorsed on the back hereof, which are hereby specially referred to and made a part of this policy, *and upon acceptance of this policy the assured agrees that its terms embody all agreements then existing between himself and the company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached.*" No writing was ever attached except the "loss-payable clause" which we have set out in full. Edwards could not change the policy except in writing attached thereto. On no theory can the alleged estoppel be given effect.

It is a serious question whether or not the petition stated a cause of action.

·VI. The Springfield Court of Appeals held that there was no breach of warranty as to the age of the car at the time it was insured. That court held that, under our statutes, Sections 6233 and 6234, Revised Statutes 1919, if the application for the insurance contains other correct information from which the insurer could readily obtain the time facts, then a misstatement as to the year in which the car was made was not a material misrepresentation of the fact, because the insurance had other information in the same application from which it could get the exact year of manufacture. On this question, after a review of many cases, the Court of Appeals says:

"We find no case, except the Bushong case by the Kansas City Court of Appeals and the Hughes case by this court, which directly holds that a misrepresentation by the insured of a fact, material or otherwise, in the application will as a matter of law defeat recovery where the application contains other correct information from which the insurer may easily ascertain the true facts as to alleged false representations. In the case at bar the correct serial number and the

correct trade model were given in the application. With this information defendant could have easily ascertained the true year of manufacture. The effort would have been no more difficult than ascertaining the correct way to spell a word with a standard dictionary at hand.

"In view of our statute, Sections 6233 and 6234, Revised Statutes 1919, and the meaning of the word *material* as used therein, we think that the rule should be, and so hold, that where there is correct information given in the application from which the insurer can easily ascertain the truth or falsity of other purported facts stated in the application, by following up the lead given by the true information, then, and in all such cases, the question of the materiality of the alleged misrepresentation would be one of fact and not of law. Such rule would be just, independent of any statute, but we are convinced that with the statute in view there cannot be serious doubt.

"Our holding here is in conflict with the Kansas City Court of Appeals in Bushong v. Security Ins. Co., 253 S. W. 175, and Hughes v. Hartford Fire Ins. Co., 257 S. W. 500, by this court. And also the conclusion here reached is somewhat counter to some of the language in Kenney v. Franklin Fire Ins. Co., 247 S. W. 249, and Smith v. American Automobile Ins. Co., 188 Mo. App. 297, 175 S. W. 113, both by the Kansas City Court of Appeals. In the Hughes case we followed the Bushong case, and coming to the conclusion that we fell into error, we overrule the Hughes case in so far as it conflicts with our ruling in the case at bar."

A reading of the full text of their opinion convinces us that the Springfield Court of Appeals is right. The other cases have not given due consideration to our statutes, supra. If I represent a thing to be white in color, and yet in the same writing give other information from which it can be readily found that it was black, rather than white, I have not made such a misrepresentation as would materially affect the party to whom the writing was addressed, in acting upon it. Let the cases mentioned by the Springfield Court of Appeals stand overruled.

Point four made by plaintiff need not be noted. From what has been said, it follows that the judgment of the circuit court should be reversed. It is so ordered. All concur.